FILED
MAY 16 2007

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| CULHANE COMMUNICATIONS and KEVIN CULHANE, | * * * * | CIV 06-4268 |
| Plaintiffs, | * * | MEMORANDUM OPINION AND ORDER |
| -vs- | * * | |
| JEFF FULLER, JCF PARTNERSHIP, LLP and DARRELL SOLBERG, d/b/a DDS MARKETING, | * * * | |
| Defendants. | * * | |

Pending before the Court is Plaintiffs' Motion to Remand (doc. 9). For the following reasons the motion will be granted.

## BACKGROUND

Plaintiffs Culhane Communications and Kevin Culhane ("Culhane"), South Dakota residents, commenced this suit in the First Judicial Circuit Court, Yankton County, South Dakota, by service of a summons and complaint on or about November 21, 2006. With the consent of defendant Darrell Solberg ("Solberg"), defendants Jeff Fuller ("Fuller") and JCF Partnership, LLC ("JCF"), Iowa residents, removed this action pursuant to 28 U.S.C. § 1441(b), contending this Court has diversity jurisdiction under 28 U.S.C. § 1332 and that Plaintiffs improperly or fraudulently joined Solberg, a South Dakota resident, as a defendant solely to defeat diversity jurisdiction. Plaintiffs filed the Motion to Remand asserting that Solberg was not fraudulently joined and, therefore, diversity jurisdiction does not exist under 28 U.S.C. § 1332 because not every plaintiff is of different citizenship than every defendant. The question is whether Plaintiffs fraudulently joined or misjoined Solberg as a defendant.

Culhane owns KVHT AM/FM radio station in Yankton, South Dakota. According to the Complaint, Culhane discussed the possibility of selling his radio station with Solberg, a media consultant. Solberg suggested that Culhane sell the station to Fuller, and Solberg represented that Fuller had the financial ability to purchase the business. Solberg, Fuller and Culhane met periodically in early 2005 to discuss a potential sale. Culhane alleges that Solberg advised him to sell the business through an LMA,[1] "which is not an outright sale, but similar to leasing the business until all payments are made." (Complaint at ¶ 12(a)). Solberg said he had experience with LMAs. Both Solberg and Fuller promised that Fuller's FCC lawyer would prepare a final LMA agreement.

Solberg, Fuller and Culhane had a meeting on June 23, 2005 regarding the potential sale. During the meeting, Culhane signed Exhibits A, B and C to the Complaint. He did not think Exhibit A was a formal LMA; Solberg and Fuller told him it was a "non-binding letter of intent." They wanted Culhane to sign it so Fuller could start working as station manager or sales manager on July 1, 2005. Culhane also signed a Brokerage Fee Document/Agreement on June 23, 2005, promising to pay Solberg a $105,000 fee on a $2,000,000 sale of the radio station to Fuller. (Doc. 1, Exhibit D of Complaint.) Fuller began working at the station on July 1, 2005. The relationship between Fuller and Culhane deteriorated until, on December 23, 2005, Culhane demanded that Fuller end the relationship.

In the counts of the Complaint asserted against Fuller and JCF, Plaintiffs seek a declaratory judgment that Exhibits A, B and C are not contracts or, if they are contracts, that they are void based on false representations made by Fuller and Solberg which were intended to induce Culhane to sign the agreements. Plaintiffs also seek the sums paid to Fuller or JCF pursuant to the agreements, along with the return of $92,004.28 in accounts receivable owned by Plaintiffs and cash in the amount of $19,802.29.

---

[1] It is not stated in the record, but the Court assumes that "LMA" stands for "Lease Management Agreement" or "Local Marketing Agreement" as referred to on the third line of Exhibit A of the Complaint.

Plaintiffs assert four separate causes of action against Solberg in the Complaint. They seek a declaratory judgment that the Brokerage Fee Document/Agreement is not a valid contract. Plaintiffs also request $5,000 paid to Solberg and damages for fraud based on allegedly material misrepresentations made by Solberg to induce Culhane into signing Exhibits A, B, C and D.

## DISCUSSION

Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 exclusive of interest and costs, and the action is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). The party invoking removal jurisdiction has the burden of establishing that federal subject-matter jurisdiction exists, and the court must resolve all doubts in favor of remand to state court. *See In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993). In order to establish complete diversity of citizenship and the removability of this case, Fuller must show that the joinder of the non-diverse party, Solberg, was fraudulent. *See Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003) ("When, as here, the respondent has joined a non-diverse party as a defendant in its state case, the petitioner may avoid remand-in the absence of a substantial-federal question-only by demonstrating that the non-diverse party was fraudulently joined."). The relevant inquiry in analyzing fraudulent joinder "focuses only on whether a plaintiff 'might' have a 'colorable' claim under state law against a fellow resident, not on the artfulness of the pleadings. A joinder is fraudulent only 'when there exists no reasonable basis in fact and law supporting a claim against the resident defendants.'" *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) (citations omitted).

Fuller is not making the usual fraudulent joinder argument in this case. He does not contest that Plaintiffs state valid claims against Solberg under the facts alleged in the Complaint, but instead he argues that Solberg was fraudulently "misjoined" under the Federal Rules of Civil Procedure because the claims against him do not arise out of the same transaction or agreement as the claims

against Fuller.[2] The crux of Fuller's argument is that Plaintiffs' claims against Fuller are entirely distinct, factually and legally, from Plaintiffs' claims against Solberg and, therefore, they cannot be joined together in one lawsuit. Federal Rule of Civil Procedure 20 governs joinder of parties and it states:

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according

---

[2]As discussed in detail in Plaintiffs' reply brief, this theory of fraudulent joinder is often referred to as "procedural misjoinder" and it began with *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The plaintiffs in*Tapscott* conceded that the two independent and unrelated claims asserted by two different groups of plaintiffs against two different groups of defendants were misjoined, but argued that misjoinder, no matter how egregious, could not constitute fraudulent joinder. The Eleventh Circuit disagreed, holding:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."... We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

*Id.* at 1360. The authorities cited in Plaintiffs' reply brief reveal that the Eleventh Circuit's failure to define "egregious misjoinder" as opposed to "mere misjoinder" has left courts struggling with application of this theory of fraudulent joinder. *See, e.g., Rutherford v. Merck & Co., Inc.*, 428 F.Supp.2d 842, 852 (S.D. Ill. 2006) ("The Court's review of the case law regarding the fraudulent misjoinder doctrine that has emerged in the ten years since *Tapscott* was decided discloses enormous judicial confusion engendered by the doctrine.") The Eighth Circuit has not addressed procedural misjoinder, but the questions surrounding the doctrine need not be resolved in this case because the Court finds that Solberg was not misjoined, either merely or egregiously. For this same reason, Fuller's reliance on a decision issued in the Central Division of the District of South Dakota to argue that this Court should sever the claims against Solberg and dismiss him from this action pursuant to Rule 21 of the Federal Rules of Civil Procedure, is rejected. *See South Dakota v. Burlington Northern & Santa Fe Ry. Co.*, 280 F.Supp.2d 919 (D.S.D. 2003) (dismissal of involuntary plaintiff that had no claim against defendants based on Rule 21).

4

> to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20(a). The purpose of Rule 20 is to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. Single trials generally tend to lessen the delay, expense and inconvenience to all concerned." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir.1974) (internal citations omitted). Joinder is strongly encouraged and courts favor "the broadest possible scope of action consistent with fairness to the parties." *Id.* at 1333. A defendant is properly joined under Rule 20 when the plaintiff has asserted a right to relief against each defendant that arises "out of the same transaction or occurrence, or series of transactions or occurrences" and there is some question of law or fact that is common to all the parties. Fed.R.Civ.P. 20(a). A defendant is not properly joined unless the plaintiff can satisfy both criteria under Rule 20. *Mosley*, 497 F.2d at 1333.

Courts employ a case by case analysis to determine whether a particular factual situation constitutes a transaction or series of transactions. *Id.* at 1333. In *Mosley*, the Eighth Circuit defined "transaction" as a word of "flexible meaning." *Id.* The Court stated that, "It may comprehend a series of occurrences, depending not so much on the immediateness of their connection as upon their logical relationship." *Id.* (quoting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926)). Thus, according to the Eighth Circuit, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* Courts do not require an "absolute identity of all events." *Id.*

In the present case, the Court finds a sufficient connection between Fuller and Solberg to allow Plaintiffs to join them in the same lawsuit. The events surrounding Plaintiffs' claims are logically related: all claims relate to the sale or lease of the radio station to Fuller. Although Solberg performed a service for Plaintiffs that required a separate payment agreement between them, Solberg's services were directly connected to the agreements between Culhane and Fuller. Culhane relied on the opinions, representations and services of Solberg in establishing his relationship with Fuller and entering into the agreements with him. It is clear that common questions of fact and law

5

will arise in Plaintiffs' claims against each defendant. Plaintiffs allege that both Fuller and Solberg made fraudulent misrepresentations that induced Culhane into signing the agreements at issue in this case. The proof of Plaintiffs' claims will overlap and separate trials would result in delay, inconvenience, and added expense to the parties and the courts. Since joinder of Solberg was appropriate, diversity of citizenship does not exist and the case must be remanded to state court.

Plaintiffs have requested that the order remanding the case require the removing defendants, Fuller and JCF, to pay Plaintiffs' costs and expenses, including attorney fees, incurred as a result of the removal, as provided in 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). There is a question whether there was an objectively reasonable basis for seeking removal of this case. In light of the unsettled state of the law regarding procedural misjoinder, the Court will give the removing defendants the benefit of the doubt and will deny the request for costs and expenses. Accordingly,

> IT IS ORDERED that the plaintiffs' Motion to Remand, doc. 9, is granted, and the Clerk of Court is directed to remand this case to the First Judicial Circuit Court, Yankton County, South Dakota.

Dated this 16th day of May, 2007.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: /s/ Sharon Lury
      DEPUTY